**Tim PEARSON, Plaintiff–Appellee,**

v.

**GARRETT FINANCIAL SERVICES, INC., Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 13, 1992.

Permission to Appeal Denied by Supreme Court March 1, 1993.

Wayne L. Robbins, Jr., Nashville, for defendant-appellant.

Thomas H. Dickenson and J. William Coley, Knoxville, for plaintiff-appellee.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The Defendant has appealed from a decree holding it liable for breach of contract.

In October, 1985, the Defendant–Appellant, Garrett Financial Services, Inc. (Garrett) entered into an agency agreement with the Plaintiff–Appellee, Tim Pearson, whereby Garrett appointed Pearson its exclusive agent to sell "Lease Programs" to banks and other financial institutions located in a designated area including all of East Tennessee. As pertinent here, the agency agreement provided (1) It was for a term of 10 years from date; (2) As compensation, Garrett was to pay Pearson 50% of the commission it received on each lease program sold by Pearson in the designated territory; (3) In addition to the commission received on the original sale of a lease, Pearson was to also receive 50% of "residual monies" received by Garrett ("residual monies" as used by the parties referred to the sale price of the leased properties at the expiration of the lease), but Pearson, however, would not be entitled to residuals upon expiration of or termination of the agency relationship; (4) The agreement provided that upon expiration or termination of the agency relationship, Pearson would not compete with Garrett in the designated territory for a period of two years; (5) Pearson also agreed to hold Garrett harmless and to indemnify it for any loss caused by him; (6) In addition to Pearson's duties to sell lease programs in the designated area, he was required, at his own expense, to help service the lease programs such as by collecting rentals in the area.

Mr. Jerry Garrett was the founder of Garrett. He was the operator and principal stockholder of the company until some time prior to 1989 when he transferred his stock to Cumberland Valley Bankshares, Inc. (Cumberland). Cumberland was also the holding company for First Cumberland Bank. After selling his stock in Garrett to Cumberland, Mr. Garrett became chairman of the board of Cumberland and president of First Cumberland Bank. Garrett had some rather severe financial problems and in November, 1989, the board of directors of Cumberland designated Mr. Glen Capps, secretary of First Cumberland Bank, as general manager of Garrett with authority to run the day-to-day operations of the company, but he was to report his activities to the board of directors of Cumberland. Mr. Garrett retained his position as president of the company but apparently exercised no managerial authority over the operations.

In March, 1990, Pearson approached Mr. Capps about terminating the agency agreement and entering into a new agreement which would be substantially to Mr. Pearson's benefit but virtually of no benefit to Garrett. Mr. Capps agreed to the terms of the contract and presented it to Mr. Garrett with the request that he sign it as president of Garrett. Mr. Garrett strongly opposed the contract but found himself in an awkward position to resist it since he was no longer a stockholder in Garrett. Also, Mr. Ron Filson, who was Pearson's father-in-law, was a member of the boards of directors of Cumberland, Garrett, and First Cumberland Bank and he requested that

Mr. Garrett sign the new contract. In order to protect his position as president of First Cumberland Bank and chairman of the board of Cumberland, Mr. Garrett signed the contract as president of Garrett on March 19, 1990. Mr. Capps also signed it as vice president of Garrett but there is no showing he was in fact a vice president of the company.

As pertinent here, the new contract provided (1) The agency agreement of 1985 was terminated; (2) Pearson was released from the agreement not to compete with Garrett in the designated area; (3) Pearson was to receive 50% of all residual monies received by Garrett on lease programs in the designated area; and (4) Pearson was to continue to service all lease programs which he had sold in the area.

Immediately after the agreement was signed, Pearson formed a leasing company and began competing with Garrett. He continued to service the lease programs he had sold for Garrett in the area and Garrett paid Pearson 50% of the residuals received until about the middle of November, 1990.

In the latter part of August, 1990, Mr. Garrett repurchased all of the capital stock of Garrett from Cumberland and started operating the company. Soon after resuming operation of the company, Mr. Garrett submitted the March 19 contract between Garrett and Pearson to his attorney for an opinion as to its legality. In November Mr. Garrett told Mr. Pearson he considered the contract null and void and he would not be paying any more residuals, and that precipitated this litigation.

Pearson filed a complaint, alleging Garrett was indebted to him in excess of $100,000. Garrett answered, denying it was indebted to him in any amount. As an affirmative defense, Garrett raised a number of issues but, as pertinent to this appeal, it insisted the contract was void for lack of consideration and also because neither Mr. Garrett nor Mr. Capps had authority to execute the contract on behalf of Garrett. Garrett also filed a counterclaim, insisting that the provisions of the 1985 contract were in full force and effect and asking the court to enjoin Pearson from competing with Garrett. It also asked for a judgment against Pearson for the sum of $28,000 which he had wrongfully received for residuals since the execution of the 1990 contract.

Upon the trial of the case, the chancellor found the issues in favor of Pearson and entered a judgment against Garrett for approximately $150,000.

Garrett has appealed, saying the court was in error. We cannot agree, and affirm for the reasons hereinafter stated.

■ The Appellant's first issue is: "The 1990 agreement lacks the consideration necessary for there to be the formation of a contract." The chancellor, in addressing this issue in his memorandum opinion, said: "The first defense asserted by defendant, Garrett Financial, is that there was no consideration for the March 1990 Agreement. We do not agree with the defense on this contention. Under the first, that is the 1985 Agreement, had plaintiff Pearson left Garrett, he would have had no obligation to service accounts and would have received no residuals. Under the March 1990 Agreement, he undertook the burden of servicing accounts, which the evidence discloses included benefits for Garrett, since the accounts had to be serviced, and he received the residuals generated by the contracts serviced. We think this is sufficient consideration under the law, since the general rule is, and would appear to be applicable here, that any consideration, however small, is sufficient. The consideration here, that is servicing the accounts, is substantial."

■ Appellant, in its brief, argues that the chancellor was in error in holding Pearson's agreement to continue servicing the lease contracts after the execution of the 1990 agreement, as he had done prior to that time, was not a valuable consideration because Pearson was agreeing to continue to do what he was already legally required to do under the 1985 contract. Appellant cites us to excellent authority which holds that a promise to perform what one is already legally obligated to do is not a valuable consideration and we agree with Appellant that what Pearson was agreeing

to do under the 1990 contract was the same thing he agreed to do under the 1985 agreement. Pearson's obligation to service contracts in the area, however, terminated upon the termination of the 1985 agency agreement. The 1990 agreement terminated the 1985 agreement. Upon termination of the 1985 agreement, Pearson was no longer contractually required to service the leases, nor was Garrett under any further obligation to pay Pearson residuals. Nevertheless, in exchange for Pearson's agreeing to continue servicing the leases, Garrett agreed to continue paying his residuals. "Mutual promises are generally held to be sufficient consideration for each other. That is, the general rule is that a promise by one party to an agreement is a sufficient consideration for a promise by the other party." 17A Am.Jur.2d, Contracts, § 138, p. 153.

In *Brown Oil Co., Inc. v. Johnson,* 689 S.W.2d 149, 151 (Tenn.1985) the court, in addressing the issue of a valuable consideration, speaking through Justice Drowota, said: "It is well settled that consideration exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do."

■ This brings us to consideration of Appellant's issue which says the 1990 agreement is not enforceable against Garrett because neither Jerry Garrett nor Glen Capps had been authorized to bind Garrett under such an agreement. We agree with the result reached by the chancellor on this issue, but for a different reason. In passing on this issue, the chancellor, in his memorandum opinion, said: "Perhaps the most seriously argued defense raised, and one that has concerned the Court very much, is the defense that the contract was signed without authority. Mr. Garrett had no authority, under the evidence, and there is question as to whether Glen Capps had authority as vice president and manager to sign the contract. Mr. Capps, according to the minutes of the November 16, 1989 meeting of the Cumberland Valley Bank Shares Board, was given full authority to staff and operate the company..... The weight of the testimony is that Mr. Capps had authority to enter into the contract under his authority to staff and operate the company. So, we think and find that there was authority for Garrett Financial to make the Agreement of March 1990 with plaintiff."

First, we disagree with the findings of the chancellor that Mr. Garrett had no authority to execute the 1990 contract. This determination by the chancellor was evidently based on what the proof showed took place at a meeting of the board of directors of Cumberland Valley Bankshares on November 16, 1989. A copy of the minutes of that meeting was filed in the record and, as pertinent here, stated: "[A] general consensus developed that Garrett Financial was floundering, was without leadership and was in immediate need of stringent management decisions to provide new direction with a reduction in expenses in order to stabilize the company and make it profitable. Current financials were discussed. Director Yount made a motion that the Board give Glenn Capps the responsibility of managing Garrett Financial Services, Incorporated, reporting directly to the Board with full authority to staff and operate the company. Mr. Capps would be designated the General Manager. The motion was seconded by Director Don Filson, and motion passed."

Although the record shows Cumberland Valley Bankshares was the owner of all the capital stock of Garrett at that time, there is no showing the board of directors of Cumberland had any right or authority over the affairs or officers of Garrett, nor is there any showing that the board of directors of Garrett ever ratified, or took similar action to, that of the Cumberland board of directors.

Generally,

The corporation and the president are separate and distinct legal entities.

Aside from his position as presiding officer of the board of directors and of the stockholders when convened in general meeting, the president of a corporation has, by virtue of his office merely, no greater power than that of any director. Whatever authority he has must be expressly conferred on him by statute,

charter, or by-law or the board of directors or be implied from express powers granted, usage or custom, or the nature of the company's business.

He may be, and frequently is, made the chief executive officer of the company and invested with broad general powers of management and superintendence; and in such case he necessarily has many implied powers. He is without power to do an act which is beyond the objects and purposes of the corporation, or which has the effect of overruling or revoking the action of the directors.

Where the by-laws provide that a president is to exercise his general management responsibilities subject to the direction of the chairman and the board, the president may not be stripped of his entire authority by the board, as such is tantamount to removal.

19 C.J.S. Corporations § 469—President; Vice President, pp. 71–72.

T.C.A. § 48–18–402, as pertinent, defines the duties of corporate officers as follows: "DUTIES OF OFFICERS.—Each officer has the authority and shall perform the duties set forth in the bylaws or, to the extent consistent with the bylaws, the duties prescribed by the board of directors...."

Article III of the bylaws of Garrett, as pertinent here, provides: 1. "The corporation shall have a president and secretary."

2. "The officers shall be elected by the board at its annual meeting..... The president shall ... have general charge and control of the affairs of the corporation, subject to the direction of the board of directors and to these bylaws. The president shall have the power ... to sign and execute all contracts and instruments of conveyance in the name of the corporation...."

The authority conferred on Mr. Garrett by the board of directors and bylaws of Garrett had never been revoked and we hold he had the authority to sign the 1990 contract in the name of the corporation.

In view of our holding that Mr. Garrett had authority to bind the company on the contract, we do not deem it necessary to pass on whether or not Mr. Capps had such authority.

 Where a trial judge has reached the correct result, it will not be reversed because he may have predicated it on an erroneous reason. *See Perlberg v. Jahn,* 773 S.W.2d 925, 928 (Tenn.App.1989). The decree of the chancellor is affirmed.

In our discretion, the cost of this appeal is taxed to the Appellee.[1] The case is remanded to the trial court for any further necessary proceedings.

GODDARD and FRANKS, JJ., concur.

---

1. Appellee did not comply with Rule 14 of the court of appeals in making additions to the abridged transcript.