IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

FILED

November 9, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

NANCY KAYE WHEELER POYNER,      )
                                )
        Plaintiff/Appellant,    )  Humphreys Chancery No. 22-148
                                )
VS.                             )   Appeal No. 01A01-9503-CH-00116
                                )
ALDEN DENNIS POYNER,            )
                                )
        Defendant/Appellee.     )


APPEAL FROM THE CHANCERY COURT OF HUMPHREYS COUNTY
AT WAVERLY, TENNESSEE
THE HONORABLE LEONARD W. MARTIN, CHANCELLOR


**Ronald S. Buchanan**
Hendersonville, Tennessee
Attorney for Appellant

**Jerry V. Smith**
Dickson, Tennessee
Attorney for Appellee


**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**


                                        **ALAN E. HIGHERS, JUDGE**


**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, JUDGE**

This is a divorce case in which the Wife appeals the trial court's division of marital property and the court's award of custody to the Husband.

## I.

The pertinent facts are as follows. The parties divorced after twelve years of marriage, during which time two sons were born of the marriage: Stephen A. Poyner, born in 1983, and David E. Poyner, born in 1990. The Appellant, Nancy Kaye Wheeler Poyner ("Wife"), filed for divorce in December of 1993, alleging that she was entitled to an absolute divorce based on the Husband's alleged physical abuse of both her and the children. In his answer, Husband denied that he was the father of David Poyner, denied that Wife was entitled to a divorce, and counterclaimed for a divorce on the basis of Wife's inappropriate marital conduct and adultery. Both parties sought custody of the two children.

Prior to trial, the court ordered blood tests to determine the paternity of David Poyner. The results definitively excluded the possibility that Husband was David's natural father, although Wife repeatedly denied that she had committed adultery. Despite the fact that the blood tests showed that he was not David's father, Husband continued to seek custody of both David and Stephen. At the beginning of trial, the parties stipulated to grounds for divorce. The Wife also withdrew her previous request for alimony.

The great bulk of testimony at trial was aimed at the custody issue. Most of the evidence presented concerned Wife's longstanding problems with anorexia and depression, which resulted in numerous hospitalizations and various side-effects from her medications. In 1992, Wife's problem with anorexia became very serious and she was hospitalized. At this time, Wife was not only depressed, but was also taking between 15 and 20 laxative pills a day to rid herself of food that she had consumed. In the span of less than a year, Wife was hospitalized six times, and doctors prescribed over twenty

2

different anti-depressant medications in an attempt to treat her condition. All of these medications had various side effects, one of which caused Wife to suffer severe anxiety attacks. Although alcohol was contraindicated with most of her medicine, Wife admitted that she drank alcohol on at least one occasion while taking these medications. Her hospital records enlarged upon this admission, reflecting that she had abused alcohol with the medications several times.

Medical records compiled by various physicians and medical staff that treated Wife contained documentation of statements made by Wife that she was planning to commit suicide or otherwise to harm herself. Husband testified that Wife had attempted suicide on three occasions either by overdosing on her medication or by drinking alcohol with her medication. Wife, however, denied that she had ever contemplated suicide. When asked by opposing counsel and the court about the discrepancy between her testimony and her medical records regarding her suicidal tendencies, Wife replied that the doctors had just "made it up." In March of 1993, Wife had a car wreck that occurred as a result of overmedication. Wife also admitted to having smoked marijuana during the parties' marriage.

Wife's last hospitalization was in March of 1993. Her treating physician, Dr. Ebert, stated in his deposition that since that time, her eating disorder was improving. Dr. Ebert thought that it was possible that the disorder would resolve completely.

Wife presented evidence that Husband had whipped the older son, Stephen, in an excessive and abusive manner on several occasions. She specifically mentioned one incident where Husband repeatedly whipped Stephen with a belt. When Wife tried to stop him, he pushed her down. Husband did not deny that this incident occurred. The following day, Wife had Husband arrested for child abuse. At the time of the trial, no formal charges had been brought against Husband.

The trial court held that based upon the evidence of Wife's problems, Husband was

3

entitled to custody of both children. The judge cautioned Husband about whipping the children and recommended that he read some books on disciplining children. The court also awarded Husband the marital residence and the majority of the parties' personal property. In return, Wife was awarded $25,000 cash, along with certain items of personal property contained on a list that she had prepared.

## II.

Wife argues that the court's division of marital property was not equitable for several reasons. First, she contends that the court erred in electing not to award to her any of the increase in value of the marital residence. Second, she takes issue with court's failure to award to her any of Husband's pension. Finally, she contends that the court considered fault in its division of the marital property, which is impermissible under Tennessee law.

There are several fundamental principles of law to guide us through issues of division of martial property. Of primary importance is the fact that trial courts have broad discretion in dividing the martial estate, and their decisions are afforded great weight on appeal. Fisher v. Fisher, 648 S.W.2d 244, 246 (1983). Moreover, findings of the trial court are accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Barnhill v. Barnhill, 826 S.W.2d 443, 459 (Tenn. App. 1991). A trial court's division of property need not be equal to be equitable, Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. App. 1988), and as a general matter, courts will evaluate the fairness of a property division by its final results. Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. App. 1990).

We will first address the issue of whether Wife should have been awarded any of the increase in value of the marital residence.

Tennessee is a "dual property" jurisdiction, which requires trial courts to first classify the parties' property as either separate or marital property before proceeding to an equitable division of the martial estate. Batson, 769 S.W.2d at 856; Wade v. Wade, 897

4

S.W.2d 702, 713 (Tenn. App. 1994). Accordingly, our initial inquiry must be whether the trial court classified the residence correctly.

T.C.A. § 36-4-121 provides, as herein relevant, that separate property is "[a]ll real and personal property owned by a spouse before marriage" and "[i]ncome from and appreciation of property owned by a spouse before marriage except when characterized as martial property...." Conversely, marital property is defined as:

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
> (B) "Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.
> (C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

T.C.A. § 36-4-121(b)(1).

Thus, according to the definition of martial property, the increase in value of separate property will only be classified as marital property when each party substantially contributes to its preservation and appreciation. Wade, 897 S.W.2d at 714. Although a "substantial contribution" must be real and significant, it need not be monetarily commensurate of appreciation. Mahaffey v. Mahaffey, 775 S.W.2d 618, 623 (Tenn. App. 1989).

In the present case, Husband's father owned the land upon which the house was built long before the parties were married and such land has never been conveyed from

5

the father to Husband. Before the parties were married, Husband built the house himself with very little outside help. The house was valued at $70,000 prior to the parties' marriage. After the marriage, Husband added onto the house a second story that contained a den, a bedroom, a closet, and a bathroom. His other additions included a garage, a greenhouse, and a patio. Husband's additions increased the value of the house by $48,000.

At the conclusion of the trial, the judge stated:

> Now then, with regard to his house. After hearing the testimony, the history of it and how it came about and so forth, I'm persuaded that she's not entitled to any part of the house. It's sort of a rare thing, but this man built this house virtually by himself, with some help from some friends and a little bit of labor and maybe a contract to put the heating and air in or something, which isn't very much. I'm sure she likes it, it was her home.
> But it's his hard work and sweat. He's built it on his father's property, and I can't see that she's entitled to any part of it. She is entitled to some monetary compensation because of other assets they've accumulated during their marriage, and I've taken a look at that, and I order that he pay her the sum of $25,000.

It appears from the judge's statements that he did not find either the residence or the increase in value of the residence to be marital property.

We agree that the house was separate property of Husband because he owned and built the house before the parties married. It follows that Wife would only be entitled to part of the increase in value upon a showing of substantial contribution to its preservation and appreciation. As the trial court noted, this is an unusual case because Husband built the house by himself with virtually no outside help. However, there is evidence in the record that Wife was a homemaker during most of the marriage, and that she performed the majority of the household chores, such as cooking and cleaning. These acts are sufficient under existing law to constitute a "substantial contribution." T.C.A. §36-4-121 (b)(1)(c). Wife is thus entitled to an equitable division of the appreciated value of this property. Accordingly, we must remand this issue to the trial court to make an equitable distribution pursuant to the factors delineated in T.C.A. §36-4-121(c).

6

We now turn to the court's distribution of the remaining martial property.

The following table illustrates our understanding from the record of the court's distribution of assets:

### DISTRIBUTION OF MARITAL PROPERTY

| ASSETS | HUSBAND | WIFE |
| --- | --- | --- |
| Increase in Value of Residence | 48,000 | -0- |
| Automobiles/Vehicles: | | |
| 1992 Ford Crown Victoria | 19,900 | -0- |
| 1987 GMC Truck | 6,950 | -0- |
| Honda 4-Wheeler | -0- | 3,000 |
| Household Goods[1] | 3,000 | 4,000 |
| Tools/Farm Equipment | 13,292 | 50 |
| Checking/Savings Accounts | 2,688 | |
| Garden/Farm Crops | 1,500 | |
| Job-Related Assets: | | |
| (a) DuPont Savings Plan | 36,626.49 | -0- |
| (b) Stock Plan | 3,895.00 | -0- |
| (c) Pension/Retirement Plan[2] | 851.00/month | -0- |
| DEBTS | | |
| Car loan | 11,011 | -0- |
| Castner Knott bill | 500 | -0- |
| Dental/Medical bills | 2,088 | -0- |
| CASH SETTLEMENT TO WIFE | | 25,000 |
| TOTAL | 122,252.49 | 32,000 |

Wife asserts that the trial court erred in failing to award her any share of Husband's pension.

The law is well-established that the value of a spouse's pension that accrues during a marriage is marital property, regardless of whether the non-employee spouse made any

---

[1]Precise value of household goods and furnishings cannot be determined from the record. The above figure constitutes an approximation based upon the figures available in the record.

[2]The present value of Husband's pension plan was not introduced at trial.

7

contribution to the pension's value.   Batson, 769 S.W.2d at 856; Kendrick v. Kendrick, No. 01-A-01-9305-CH-00207, 1994 WL 642775 (Tenn. App. Nov. 16, 1994). Accordingly, T.C.A. § 36-4-121(b)(1) provides that "marital property" includes income from, and any increase in value during the marriage of ... the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage."

Furthermore, recent case law holds that nonvested retirement benefits are also marital property that is subject to division in a divorce action, even though nonvested benefits are not mentioned in the statute.  See, T.C.A. § 36-4-121(b)(1)(B);  Towner v. Towner, 858 S.W.2d 888, 891 (Tenn. 1993); Cohen v. Cohen, No. 01A01-9402-CV-00464, 1995 WL 273656 (Tenn. App. May 10, 1995), *perm. to app. granted* 10/16/95.

There are two methods that have been recognized and approved by this Court for valuing and distributing pensions.  The choice is discretionary depending upon the facts of each case.  Cohen, 1995 WL at *5.  The first is the present value method, where the court places a present cash value on the interest that has been acquired in the pension during the time that the parties were married.  Kendrick,  1994 WL 111027, at *5.  After the court calculates the present cash value, it should award the pension to the employee spouse and award marital property of equal value to the other spouse  Id.;  Mahaffy  v. Mahaffy, 1989 WL 128 923, at *3 (Tenn. App. 1989).

The second method is the retained jurisdiction method, which requires the court to maintain jurisdiction over the case and to divide the interest in the pension when it matures.  Kendrick, 1994 WL 111027 at *5.  This Court further elaborated upon this method in Kendrick, stating:

> In some jurisdictions, the courts use this method to determine the nonemployee spouse's share in advance and then enter an order identifying the portion  that the spouse will receive if and when the employee spouse begins drawing his or her retirement benefits.  The nonemployee spouse's share is commonly expressed as a fraction or percent of the employee spouse's monthly pension benefit.  (citations omitted)

8

In the case at bar, the only evidence presented to the lower court establishing the value of Husband's pension was that at the date of the divorce trial, Husband would be eligible to receive $851.00 a month upon reaching age 65. Neither party attempted to place a present value on this pension, nor did the court request it. Also, the court did not mention Husband's pension interest in its discussion of the division of marital property. We therefore remand this case to the trial court with instructions to value and consider Husband's pension as martial property and to award some portion thereof to Wife in a manner consistent with the foregoing discussion.

Wife next contends that the trial court impermissibly considered fault in its distribution of property.

At trial, after the Husband and Wife had testified, the judge stated that before other witnesses testified, he wanted to get down to the "meat of the coconut" and divide the property. Wife prepared a list of all of the items of personal property that she wanted and Husband agreed that she could have everything on the list. Husband took the remainder of all property that was not listed by Wife. The Court then spoke to the parties' attorneys in an attempt to arrive at a dollar figure to award to Wife that was adequate to offset the large disparity in the division of the property in favor of Husband. The Court stated:

> I'm not saying that it's an equal dollar value thing, I'm saying that given all the factual situation in this case, what he brought in, what she brought in, what they've done, where it came from, the whole nine yards, the length and duration of their marriage, **their relative degrees of fault** as the case may be, what is an amount of money that in this case is appropriate for him to pay her to balance it off?

> The meat of this coconut is to decide how much money is this man going to have to pay this woman going out of the marriage. Obviously taking into consideration all of the factors that apply in any divorce case with regard to the division of a couple's assets, the length of the marriage, their durations, **fault** and all those things that normally go into that decision.

> I'm simply telling you that she wants certain things, he says she can have them, she's got them. He's got everything else and we've got to decide how much money she's entitled to get...I'm saying she's got very little. Look at how long they've been married, **who's at**

**fault**, so forth, the source of what they've got and all.

It is evident from the record that the judge considered fault in making his distribution of marital property. Tennessee law unequivocally holds that marital fault may not be considered as a factor in the division of marital property. Kelly v. Kelly, 679 S.W.2d 458, 462 (Tenn. App. 1984); T.C.A. § 36-4-121(a) (providing that martial property should be equitably divided without regard to fault).

T.C.A. § 36-4-121(c) sets forth the factors a court should consider when making an equitable division of marital property:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisition of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party; and
> (10) Such other factors as are necessary to consider the equities between the parties.

T.C.A. § 36-4-121(c).

Under the terms of the governing statute, the lower court may properly consider the following items of evidence in making a distribution of the property:

(1) The parties were married twelve years;

(2) Wife is in poor physical and mental health, has a high school education, and had a much smaller estate prior to the marriage;

(3) Wife does not appear to be capable of securing employment at substantially above

10

minimum wage; Husband makes $40,000 a year;

(4)  Wife was the primary spouse that cooked, cleaned, and cared for the children during their marriage;

(5)  The tax consequences to each party regarding Husband's job-related assets.

This case is remanded with instructions to the lower court to divide and distribute the martial property without regard to fault, and to consider the above factors in making its determination.

**III**

Wife argues that the lower court erred in granting custody of both children to Husband.  Wife contends that because Husband was not the natural father of  David, the court should have awarded custody to Wife in the absence of a showing that she is unfit.

Assuming that Husband is not the natural father of David, Wife is correct that a custody analysis should not proceed under the usual "best interest of the child" analysis. The proper standard to be applied in a custody dispute between a natural parent and one who is not a natural parent was espoused by the Tennessee Supreme Court in three recent decisions.

The first of these decisions was Bond v. McKenzie, 896 S.W.2d 546 (Tenn. 1995), in which the custody dispute was between an adoptive couple and the natural mother.  The Court relied upon its previous decisions in Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993), and Nale v. Robertson, 871 S.W.2d 674 (Tenn. 1994), in holding that there exists a constitutional privacy right in the parent-child relationship.  Id. at 547.  Because of this right to privacy, the Court held, a state will lack a sufficiently compelling justification to interfere with the parent-child relationship when no substantial harm threatens the child's welfare.  Id. at 548 (citing Hawk, 855 S.W.2d at 577).  The Court succinctly stated the custody rule as  follows:

> [I]n a contest between a parent and a non-parent,
> a parent cannot be deprived of the custody of a

11

> child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general 'best interest of the child' evaluation in making a determination of custody.

Id. at 548.

The second decision was Petroskey v. Keene, 898 S.W.2d 726 (Tenn. 1995), where the child's natural father and the child's maternal grandmother battled for custody. Id. at 727. The Court set out the law from Bond and held that the natural father was entitled to custody because there was no evidence that the child was in danger of substantial harm in his custody. Id. at 869. Therefore, the Court held, a "best interest of the child" determination was not necessary. Id.

Finally, in Simmons v. Simmons, 900 S.W.2d 602 (Tenn. 1995), the Court held that in a visitation dispute between the natural mother and adoptive husband and the parents of the natural father, a court must engage in the threshold inquiry of whether there exists the danger of substantial harm to the child before proceeding to a best interest analysis. Id. at 684.

The effect of these decisions is to obligate a court first to determine whether a child would be exposed to a danger of substantial harm in the custody of the natural parent. If the answer to this initial inquiry is no, then a best interest of the child analysis will be precluded and custody will remain with the natural parent. If, on the other hand, there is a finding of substantial harm to the child, a court may then engage in a best interest of the child evaluation to determine custody. Bond, 896 S.W. 2d at 548.

The above decisions had not been rendered at the time of the trial and thus, the trial court did not make an explicit finding that the child was in danger of substantial harm. The court did, however, fully explain its rationale for its awarding custody to Husband. The judge stated:

> [B]ased upon all the proof before the Court, I absolutely cannot in good conscience award custody of these children to this woman. I'm aware that her family loves

her, I'm aware she loves her children. But how in the world, in the choice between this man and her, can I give these children to this woman who has been in and out of various hospitals, who has all these medical problems, has taken 20 some odd different medications, who abuses laxatives, takes 15 to 20 laxatives a day, one of these records shows 20 a day and so forth, who is anorexic, who lets her weight get way down and has to be admitted. And she's out and she's readmitted, and takes all these drugs on depression. She's on this drug; she had this car wreck; she says you can drink alcohol with it...I can't turn these children over to somebody like that. ..She doesn't know when she's going to go off on one of these tangents. If she's got the children and she's at herself, fine. But what if she goes into one of these fits of depression? What if she starts taking a bunch of drugs? What if she's on drugs and drinks? What if she gets out and has a wreck and kills the kids or does something else to them? She is simply not stable enough...

Where a trial judge has reached the correct result, it will not be reversed because he may have predicated it on an erroneous reason. Pearson v. Garrett Financial Services, Inc., 849 S.W.2d 776, 780 (Tenn. App. 1992). The judgment may simply be affirmed on the proper basis. Allen v. National Bank of Newport, 839 S.W.2d 763, 765 (Tenn. App. 1992).

It is apparent from the judge's statements that while he did not make a specific finding of substantial harm to the children, he implicitly found the children to be in danger of substantial harm with the Wife. Regardless of which standard the court applied, custody of the children belongs with the Husband. This result is substantiated by ample evidence in the record. We therefore affirm the court's award of custody of both children to Husband.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part, and the cause remanded for further proceedings consistent with this opinion. The costs of appeal are assessed equally against both parties.

_____
HIGHERS, J.

13

CONCUR:

_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.