IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2011

DENISE JEREMIAH and TIMOTHY JEREMIAH v.
WILLIAM BLALOCK

Appeal from the Circuit Court for Marshall County
No. 08-CV-120     Franklin L. Russell, Judge

No. M2010-01278-COA-R3-CV - Filed July 29, 2011

The plaintiff home buyer and defendant home seller entered into an agreement to repair a drain at some future date because it had been improperly piped out of the buyer's house. When the time for performance came, the drain was not moved, resulting in damages to the buyer's home. The buyer sued for breach of contract. The circuit court granted a directed verdict to the defendant on the ground that there was no consideration to support the contract. We find that the mutual promises made by the parties constituted adequate consideration. We accordingly reverse the trial court and remand this case for such further proceedings as necessary.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Vincent H. Peppe, Spring Hill, Tennessee, for the appellants, Denise Jeremiah and Timothy Jeremiah.

Cecilia West Spivy, Lewisburg, Tennessee, for the appellee, William Blalock.

OPINION

I. BACKGROUND

In July of 1990, Denise and Timothy Jeremiah purchased a home from William Blalock ("Blalock"), the owner of B & B Builders ("B & B"), a construction company that builds homes in southern middle Tennessee. The purchase was expedited by Donna Giles

("Giles") of DJ Realty, who served as the seller's agent.[1]  DJ Realty listed a number of homes that were built and owned by Blalock, and Giles had previously helped the Jeremiahs rent another home.  Giles was in regular communication with the Jeremiahs both before and after the purchase of the home.

After the home was purchased, the Jeremiahs obtained a one-year warranty from Blalock on the home that was separate from the contract for the sale of the home.  The warranty in essence gave the Jeremiahs one year to compile a list of problems with the home construction and alert Blalock, who would then perform the repairs.  This list is colloquially known as a "punch list."  The Jeremiahs completed the punch list, and Donna Giles gave the list to B & B for its review.  Among the items included on the punch list was a positive drain that was supposed to run from the Jeremiahs' crawl space into their yard.  The drain is designed to prevent moisture that may do damage to the house from building up in the crawl space.  The drain under the Jeremiahs' house, however, emptied onto an adjacent piece of property and needed to be moved in the event that the adjacent parcel was ever built upon, lest it become clogged and prevent moisture from leaving the crawl space and causing damage.

In July of 1991, Giles sent the Jeremiahs a letter reflecting Blalock's visit to the Jeremiahs' home and his inspection of the items on the punch list.  There were eleven small items of dispute besides the drain discussed in the letter.  However, the letter acknowledged the drain problem stating, "Since Blalock owns side lot, he will write a letter acknowledging that your positive drain is piped onto the adjacent property.  If and when he sells or builds on the lot, it will be Blalock's  responsibility to pipe your drain off the adjacent parcel.  In the meantime, it will remain as is."  The last paragraph of the letter states, "[I]t is our belief that B & B Builders will respond to these items.  Once completed, they will have satisfied the 'punch list' from the one-year warranty of responsibility."   The letter was signed by Donna Giles, Blalock's agent.  B & B Builders was carbon copied on the letter.

After several months, many items on the punch list were not yet satisfied by Blalock.  This led the Jeremiahs to retain an attorney.  In December of 1991, Blalock wrote the Jeremiahs' attorney requesting a meeting with the Jeremiahs to resolve the dispute over the punch list.[2]   In this letter, Blalock expressed his, "[D]esire to resolve the issue as soon as possible."  The meeting took place in the office of the Jeremiahs' attorney on January 6,

---

[1]The contract of sale is not found in the record, but Donna Giles testified at deposition that she was the seller's agent.

[2]Blalock requested that the Jeremiahs, their attorney, and a representative from DJ Realty be present along with Blalock and his son.

1992. Giles sent the Jeremiahs a letter on January 7 outlining the actions that B & B Builders were to take regarding the items in dispute on the punch list. The letter stated that the Jeremiahs were to sign and acknowledge their agreement with the actions to be taken in the letter and that if they did not agree with a particular item, they were required to respond within seven days.

Regarding the drain, the letter stated that, "Blalock [will] provide [a] letter acknowledging the drain location and that he will move it if and when Lot #2 is sold or built on." The letter further provided that once the items on the punch list were completed, the Jeremiahs would note their acceptance via a letter releasing Blalock from the one-year warranty, which had expired on July 27, 1991. The provision stated that only the items on the punch list would extend outside the warranty. The letter was signed by Giles and Phil Comstock, another DJ Realty employee who was the listing agent for the Jeremiah home. Copies of the letter were sent to the Jeremiahs' attorney and to B & B Builders.

In 2005, the parcel adjacent to the Jeremiahs' home was sold and a house was built upon it. The Jeremiahs sent Blalock a letter asking that the drain be moved pursuant to their agreement of January 1992. Blalock failed to move the drain and soon after the lot was prepared for construction, the positive drain became clogged and water began to accumulate in the Jeremiahs' crawl space. The humidity that developed in the crawl space caused the insulation on the ceiling of the crawl space to fall, causing approximately $3,900 in damage to the house. The Jeremiahs filed suit in the Court of General Sessions of Marshall County where a judgment was entered in their favor for $3,900 plus interest.

## II. PROCEEDINGS IN CIRCUIT COURT

Blalock appealed to the Circuit Court of Marshall County. Mr. Jeremiah was the principal witness at trial. He entered into evidence the letter of August 1992 from Giles acknowledging that Blalock would move the drain when the adjacent lot was built upon. He also testified that Giles was his primary contact with DJ Realty and that he principally communicated with her and also with Phil Comstock, though less frequently. On cross-examination, Mr. Jeremiah admitted he never received a letter from Blalock acknowledging that Blalock would move the drain and also that he never asked for the letter. Mr. Jeremiah also testified as to the letter of January of 1992 signed by Donna Giles and Phil Comstock regarding the meeting between the Jeremiahs, Blalock, Donna Giles, and the Jeremiahs' attorney that transpired on January 6, 1992.

In addition to the letter, Mr. Jeremiah also testified that when the meeting concluded, he was under the impression that Blalock would move the drain, but conceded that he never asked for and never received a letter from Blalock acknowledging that Blalock would move

the drain if the land was ever built upon. He further testified that he agreed to release the builder and the real estate agency and its agents from any claims that occurred after the provisions in the letter were satisfied. This assertion was not attacked on cross-examination. Mr. Jeremiah also testified he never sent a letter releasing Blalock from his warranty obligation. It was admitted in court that Blalock sold the lot next door; Mr. Jeremiah testified to pictures showing the damage to the home from the accumulation of water, and also the damaged insulation in the crawl space.

After Mr. Jeremiah's testimony, the defendant made a Motion to Dismiss pursuant to Tenn. Code Ann. 29-2-101(a), the Tennessee Statute of Frauds.[3] The motion further stated that neither Giles nor Comstock had the authority to bind Blalock, and since Blalock never sent the Jeremiahs a letter saying he would move the drain, there was no enforceable contract between the parties. Counsel for Blalock cited *Blair v. Brownson*, 197 S.W.3d 681 (Tenn. 2006), for the proposition that an agent may not bind a property owner to a real estate contract. Counsel for the Jeremiahs disputed the relevance of the application of *Blair v. Brownson* to this case because the contract at issue was not a contract for the sale of real estate, but rather a separate agreement for the repair of certain items on the subject home.

At the close of the plaintiff's proof, Blalock raised an oral motion for directed verdict. The court granted the motion and dismissed the case for lack of consideration. The court did enter limited findings of fact but did not explain its lack of consideration holding. "A motion for a directed verdict requires the trial court to determine whether, as a matter of law, the evidence is sufficient to create an issue for the jury to decide." *Underwood v. Waterslides of Mid-America*, 823 S.W.2d 271, 276 (Tenn. Ct. App. 1991). A trial court must take the strongest view of the evidence in favor of the non-moving party when ruling on a directed verdict. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999).

## III. ANALYSIS

The Jeremiahs appealed pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The sole issue on appeal is whether the trial court erroneously concluded as a matter of law that there was no consideration present in the contract between the Jeremiahs and Blalock. The facts of this case are not in dispute.[4] In reviewing findings of fact, this

---

[3]The motion stated that the letters of August 1991 and January 1992 violated Tennessee's Statute of Frauds provision requiring real estate contracts and contracts in excess of one year's time to be in writing and signed by the party to be charged. Counsel for Blalock argued that Blalock was the party to be charged and that he did not consent to be bound.

[4]There is no transcript of the trial proceedings. Both parties signed a Statement of Evidence

(continued...)

court reviews them *de novo* with a presumption of correctness afforded to the trial court unless the evidence preponderates otherwise. Tenn. R. App. P. 13(c). Questions of law are reviewed *de novo* with no presumption of correctness given to the trial court. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

Three different agreements are discussed in this case: a real estate contract for the sale of the home; a one-year warranty contract on the home; and an oral contract to move the drain that resulted from efforts to resolve issues related to the warranty contract. The contract that purportedly failed for lack of consideration is the oral contract, and that contract is the subject of this dispute. The Jeremiahs assert on appeal that an oral contract existed between them and Blalock to move the drain when the adjacent lot was built upon, and that this contract was supported by consideration. The Jeremiahs argue that their promise to provide a written release of their claims against the builder, the builder's realtor, and its agents, in return for the builder's promise to move the drain when the time came, establishes a bargained-for exchange and is adequate consideration. The Jeremiahs assert that the letter of January 1992 is prima facie evidence of consideration and shifts the burden of persuasion to the defendant to rebut the presumption of a valid contract. Moreover, the Jeremiahs point to evidence in the record that establishes a history of negotiation between the parties and assert that this suggests an intent on the part of Blalock to satisfy the Jeremiahs' problems with tasks on the punch list, further buttressing the proposition that a contract existed between the two parties.

The existence of consideration is an essential element in the formation of a valid contract. Under Tennessee law, consideration exists when the promisee does something it is under no legal duty to do, or refrains from doing something it has a legal right to do. *Brown Oil Co. v. Johnson*, 689 S.W.2d 149, 151 (Tenn. 1985); *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995) (citing *Brown Oil Co. v. Johnson*, 689 S.W.2d 149 Tenn. 1985); *Sutton v. First National Bank*, 620 S.W.2d 526, 531 (Tenn. Ct. App. 1981) (stating "A valuable consideration is either a benefit to the party promising or a prejudice or trouble to the party to whom the promise is made.") (citing *Dixon v. Manier*, 545 S.W.2d 948 (Tenn Ct. App. 1976)). Consideration may also exist when something of value has been bargained for and is given in exchange for a promise. This thing of value may take a number of forms such as a promise for a promise, an act, or forbearance by a party to refrain from doing something. *Pearson v. Garrett Fin. Serv.*, 849 S.W.2d 776 (Tenn. Ct. App. 1992) (quoting Am. Jur. 2d Contracts § 138 (2011), ". . . [P]romise by one party to an agreement is a sufficient consideration for a promise by the other party."). *See also* 8 Tennessee Practice

---

[4](...continued)
outlining the undisputed facts and submitted them to this court pursuant to Tennessee Rule of Appellate Procedure 24(c).

§ 13.04 (2010).

In this case, the record reflects, and the correspondence indicates, that both parties bargained for the terms of the contract to move the drain, and each party obtained a promise from the other: the Jeremiahs sought Blalock's promise to move the drain when the adjacent lot was built upon, and Blalock obtained the Jeremiahs' promise to release him from his other obligations under the warranty.[5] Blalock wrote to the Jeremiahs directly expressing his intention to resolve the remaining problems the Jeremiahs were having with the punch list, the drain included; and his agent Giles wrote to the Jeremiahs two different times promising that Blalock would move the drain when the adjacent lot was built upon. The letters of August of 1991 and January of 1992 indicate a bargained-for exchange that is supported by mutual promises to perform: A promise by the Jeremiahs to release Blalock in return for Blalock's promise to move the drain when the circumstances required even though that time may be after the term of the warranty. Essentially, the Jeremiahs agreed to delay a demand for performance, and Mr. Blalock agreed to be bound to perform at a later date. The agreement to move the drain is therefore supported by valid consideration.

## IV. CONCLUSION

The contract between the Jeremiahs and Blalock to move the positive drain was supported by mutual promises, and that was adequate consideration. The decision of the Circuit Court granting a directed verdict to the defendant is therefore reversed. Because the verdict was directed before the defense presented its evidence, the case is remanded to give the defense an opportunity to present additional defenses and for whatever further proceedings are necessary. Costs are taxed to the appellee, William Blalock.

_____
PATRICIA J. COTTRELL, JUDGE

---

[5]The Pre-existing Duty Rule has no application here because this case concerns mutual promises as a basis for consideration, not a promise in return for a performance. Mutual promises are held to be a valid basis for consideration. *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 651 (Tenn. Ct. App. 2001); *Pearson v. Garrett Fin. Serv.*, 849 S.W.2d 776 (Tenn. Ct. App. 1992).