# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 12, 2016 Session

## THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY v. WOOD RIDGE DEVELOPMENT, INC., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 12777I   Claudia Bonnyman, Chancellor**

_____

### No. M2015-01556-COA-R3-CV – Filed November 4, 2016

_____

The developer of a Nashville subdivision and its surety entered into three performance agreements by which they bound themselves to complete the infrastructure in the subdivision. The Metropolitan Government brought an action to enforce the agreements against both parties when the developer failed to complete the infrastructure. The surety filed an answer as well as a cross claim against the developer and a third-party complaint against a group of investors who had executed a separate agreement to indemnify the surety for any amounts the surety might pay or be held liable. After settling with the Metropolitan Government, the surety sought summary judgment against the developer and investors; the cross and third-party defendants also sought summary judgment asserting that, since the surety did not issue a separate bond, they had no obligation to indemnify the surety. The court granted summary judgment to the surety upon holding that the performance agreement operated as a bond and entitled the surety to indemnification. The developer and investors appeal the grant of the surety's motion and the denial of their motion. We hold that the surety's execution of the performance agreements operated as an "undertaking[] or other writing[] obligatory in nature of a bond" as contemplated by the indemnity agreement and, accordingly, affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Arthur E. McClellan, Gallatin, Tennessee, for the appellants, Wood Ridge Development, Inc., et al.

Lora Barkenbus Fox and Catherine J. Pham, Nashville, Tennessee, for the appellee, the Metropolitan Government of Nashville and Davidson County.

Philip L. Robertson, Franklin, Tennessee, for the appellee, Lexon Insurance Company.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Wood Ridge Development, Inc. ("WRD") was the developer of Carothers Crossing Subdivision, located in Davidson County. In order to receive approval of the subdivision plat for Carothers Crossing, WRD was required by the Metropolitan Government of Nashville and Davidson County ("Metro") to construct the roadways, sidewalks, water facilities, drainage facilities, sewer infrastructure, and other improvements in the subdivision. To fulfill this obligation, WRD, as principal, and Lexon Insurance Company ("Lexon"), as surety, executed three performance agreements wherein they bound themselves to Metro to complete all required public infrastructure in the subdivision. Each agreement covered a different phase of construction within the subdivision and bore a different number, identified as a "Bond #." The first agreement was executed on May 24, 2007; it bore the bond number 1021035, covered improvements in Phase I of the subdivision, and required "the execution of a bond or other surety in the sum of . . . $1,186,900" and that the infrastructure construction be completed by June 1, 2008. The second and third agreements were both executed on July 23 and covered Phase 2, Section 1 and Phase 2, Section 2; both required "a bond or other surety" in the amount of $764,850 and $645,425, respectively, and the completion of infrastructure construction by August 1, 2008. They bore bond numbers 1021050 and 1021049, respectively.

WRD did not complete the infrastructure by the deadlines in the performance agreements, and in August 2009 WRD was administratively dissolved by the State of Tennessee. Metro sent three letters to Lexon in October 2009, demanding payments of $309,500 for WRD's default with respect to Phase 1; $318,850 for Phase 2, Section 1; and $450,425 for Phase 2, Section 2. When payment was not made, Metro filed suit in Davidson County Chancery Court on May 31, 2012, naming WRD and Lexon as defendants and seeking "injunctive relief, specific performance under the Agreements, and a declaration of the parties' rights under the Agreements, and/or damages, costs, and fees, including attorneys' fees."

Lexon answered, generally denying the allegations that it was liable to Metro. Lexon filed a cross claim against WRD and a third-party complaint against Wood Ridge Investments, LLC, and its members Don Smithson, Susan Smithson, Ed Richey, and Candy Richey (collectively, "Wood Ridge Investments") for breach of contract arising under a General Agreement of Indemnity ("indemnity agreement"), which had been

2

executed on May 10, 2007 and in which WRD, Wood Ridge Investments, and its members (collectively the "Indemnitors") agreed to indemnify Lexon for any amounts Lexon was required to pay for executing "certain bonds, undertakings, and other writings obligatory in the nature of a bond" on behalf of the Indemnitors.

In due course, Lexon filed a motion for summary judgment on both its cross-claim and third party complaint, and the Indemnitors filed a motion for summary judgment seeking dismissal of Lexon's claim. The court granted summary judgment to Lexon and denied the Indemnitors' motion; the court subsequently certified the order as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

The Indemnitors appeal, articulating the following issues for our review:

1. Whether the trial court erred in failing to conform with Tennessee Rules of Civil Procedure, Rule 56.04, by stating legal grounds for its holdings.

2. Whether the trial court erred in holding that the three (3) performance agreements were surety bonds.

3. Whether the trial court erred in holding that cross/third-party defendants were liable under the indemnity agreement without a finding that Wood Ridge Development, Inc. had defaulted pursuant to the performance agreements.

## II. STANDARD OF REVIEW

The resolution of this appeal turns upon the interpretation and application of the indemnity agreement, a contract; this is a matter of law and thus appropriate for resolution by summary judgment. *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). The lower court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Angus v. Western Heritage Ins. Co.,* 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). On appeal, we must "review the contract anew and make our own independent determination of the agreement's meaning." *Hillsboro Plaza Enters. v. Moon,* 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)).

We review the trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Our review requires "a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* (citing *Estate of*

*Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)).  Under Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.  "Cross-motions for summary judgment are no more than claims by each side that it alone is entitled to a summary judgment," and each must be ruled on in an "individual and separate basis."  *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 83 (Tenn. 2010) (citing *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir. 1968); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003); *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001); *Philip Morris, Inc. v. Harshbarger,* 122 F.3d 58, 62 n. 4 (1st Cir. 1997); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 335–36 (3d ed. 1998)).  "When considering individual competing cross-motions for summary judgment, the court must take care to resolve all factual disputes and any competing rational inferences in the light most favorable to the party opposing each motion."  *Id.* (citing *Wightman v. Springfield Terminal Ry.,* 100 F.3d 228, 230 (1st Cir. 1996); *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir. 1981)).

### III. ANALYSIS

### A. Compliance with Rule 56.04

The Indemnitors first contend that the order on the motions for summary judgment fails to comply with Rule 56.04 of the Tennessee Rules of Civil Procedure, which requires the court to "state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."  Tenn. R. Civ. P. 56.04.  The Indemnitors assert that the court failed to state the factual and legal grounds for denying their motion for summary judgment and for granting Lexon's motion for summary judgment.

We do not agree with the argument that the order contains no findings of fact or conclusions of law.  The order reads in pertinent part:

> The Court finds the following material facts to be undisputed and makes the following conclusions of law:
>
> 1. Lexon, as surety, issued and delivered the Performance Agreement at issue in this lawsuit in favor of Plaintiff Metropolitan Government of Nashville and Davidson County ("Metro"), as obligee, and on behalf of Indemnitor Wood Ridge Development, LLC, as principal;
> 2. The Performance Agreement is a surety bond and an undertaking in the nature of a surety bond;

4

3. Indemnitors signed the indemnity agreements at issue in this lawsuit in consideration for Lexon issuing the Performance Agreement (collectively, the "Indemnity Agreement");

4. A claim was made upon Lexon by Metro under the Performance Agreement;

5. The Indemnity Agreement affords Lexon the sole right to determine for itself and the Indemnitors whether to defend or compromise claims;

6. The Indemnity Agreement further requires Indemnitors to post collateral sufficient to cover any reserve created by Lexon, and Lexon did in fact set up a reserve;

7. The Indemnity Agreement requires Indemnitors to defend, exonerate, and indemnify Lexon from and against any and all loss, costs, expenses, and attorneys['] fees, incurred by it as a result of having executed any surety bond or undertaking in the nature of a bond, and to further pay all premiums;

8. Lexon made demand upon Indemnitors to defend, exonerate, and indemnify it from Metro's claim, to collateralize Lexon in the amount of $1,078,775, and to pay premiums, all of which Indemnitors failed to do;

9. Lexon reasonably determined to defend and to ultimately compromise Metro's claim and entered into an agreed order with Metro dated December 9, 2013, whereby Lexon agreed to perform a certain scope of work encompassed by the Performance Agreement;

10. Lexon has incurred losses of not less than $31,150 towards the performance of said scope of work, $31,754.85 in attorney's fees in defending claims arising by reason of the Performance Agreement and in pursuing its claims under the Indemnity Agreement, and $133,044 in unpaid premiums, for a total loss to date of not less than $195,948.85;

11. Lexon reasonably estimates the remaining costs to complete the scope of work under the agreed order with Metro to be $616,751.25; and

12. Indemnitors are jointly and severally liable to Lexon as a matter of law, pursuant to the indemnity agreement."

Rule 56 does not require that factual findings and conclusions of law be stated in separate sections but that the trial court state the legal grounds upon which it denies or grants a motion for summary judgment. Both motions for summary judgment called for the court to resolve the same legal issue, i.e., whether the indemnity agreement rendered the Indemnitors liable to Lexon. The 12 statements contained factual findings, conclusions of law, or a mixture of the two and, viewed in their entirety and in context, provide the legal grounds for the grant of Lexon's motion and the denial of the Indemnitors' motion. Thus, the order complies with Rule 56.04.

5

**B. Lexon's Motion for Summary Judgment**

Lexon's motion was premised on the interpretation and application of the indemnity agreement, which is a contract between Lexon and the Indemnitors; as such, our consideration of its meaning and effect is governed by the canons of construction set forth in *Eatherly Const. Co. v. HTI Mem'l Hosp.:*

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning, and neither party is to be favored in the construction. The court, at arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written.

M2003-02313-COA-R3-CV, 2005 WL 2217078, at *4–5 (Tenn. Ct. App. Sept. 12, 2005) (internal citations omitted). Neither party has argued that any provision of the indemnity agreement is ambiguous, and upon our review, we discern no ambiguity. "If clear and unambiguous, the literal meaning of the [contract's] language controls the outcome of contract disputes." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002).

Relevant to our resolution of the question of the Indemnitors' liability are the following provisions of the indemnity agreement:

GENERAL AGREEMENT OF INDEMNITY

\*\*\*

> WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete Indemnification.

\*\*\*

6

2. The Indemnitors will Indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuation, thereof or substitutes therefore, including fees of attorneys, . . . and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitors liability therefore to the Company.

\*\*\*

5. The Company shall have the exclusive right to determine for Itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

\*\*\*

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

\*\*\*

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds . . . , the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contacts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred. . . .

In the introductory paragraph, the parties recognize that "certain bonds, undertakings, or other writings obligatory in nature of a bond" would be executed by Lexon on behalf of the Indemnitors; in the same paragraph, that language is shortened to "such bonds." The paragraph also recognizes Lexon's requirement that it be indemnified

as a prerequisite to executing "such bonds." The scope of indemnification includes "every claim, demand, liability, cost, charge, suit, judgment and expense which [Lexon] may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuation, thereof or substitutes therefore." In addition, if a claim was made or suit brought relative to the underlying work, Lexon is authorized to defend or settle the claim and take possession of the work or contract; in such an event, the Indemnitors are bound by Lexon's decision.

The parties disagree whether the performance agreement constituted a "bond" within the meaning of the indemnity agreement. The Indemnitors assert that the trial court erred in holding that "the Performance Agreement[] constituted a performance bond under Chapter 6-1 and 2 of Metro's subdivision regulations," and that since no separate bond was issued by Lexon, they had no obligation to indemnify Lexon.[1] The indemnity agreement contemplates that Lexon would issue "certain bonds, *undertakings* and *other writings obligatory in nature of a bond*" (emphasis added), and Lexon's execution of the three performance agreements constituted such an undertaking and obligated Lexon to guarantee WRD's performance. It does not matter whether the performance agreement complies with the subdivision regulations to invoke the obligation to indemnify. *See Nat'l Sur. United States Fid. & Guar. Co. v. Rainey,* 113 S.W. 397, 407 (Tenn. 1908) (noting that "although the instrument may not conform to the special provisions of a statute or regulation in compliance with which the parties executed it, nevertheless it is a contract voluntarily entered into upon a sufficient consideration, for a purpose not contrary to law, and therefore it is obligatory on the parties to it in like manner as any other contract or agreement is held valid at common law" (quoting *President, etc., of Bank of Brighton v. Smith*, 87 Mass. 413, 415 (Mass. 1862)).[2]

---

[1] This argument is premised in part on words that are not in the order, which actually reads, "The performance agreement is a surety bond and an undertaking in the nature of a surety bond." The trial court did not hold that the performance agreement constituted a "performance bond," as that term is defined term in Metro's subdivision regulations; neither does the order refer to the regulations.

[2] The Indemnitors also "take the position that without Lexon issuing the 'surety bond' mandated by Chapter 6-1 and 2 of Metro's Subdivision Regulations, the Indemnity Agreement failed for lack of consideration." This argument is without merit. "[C]onsideration must be measured at the time the parties enter into their contract." *GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 188 (Tenn. Ct. App. 2010) (citing 17A Am.Jur.2d *Contracts* § 114 (Supp. 2008)). "Courts 'will not inquire into the adequacy or inadequacy of the consideration for a compromise fairly and deliberately made.'" *Id.* (quoting *Canonie Energy, Inc. v. King,* No. 03A01-9506-CH-00200, 1996 WL 87440, at *6 (Tenn. Ct. App. Mar.1, 1996)). "It is well-settled that consideration exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do." *Id.* (quoting *Brown Oil Co. v. Johnson,* 689 S.W.2d 149, 151 (Tenn. 1985); *Pearson v. Garrett Fin. Servs., Inc.,* 849 S.W.2d 776, 779 (Tenn. Ct. App.1992)). The indemnity agreement was supported by the parties' mutual promises to perform, i.e., Lexon would issue a surety bond or other writing in the nature of a bond, which it did when it signed the three performance agreements as surety, and the Indemnitors agreed to indemnify Lexon for any costs arising out of a claim made with respect to the "bonds,

In support of its motion, Lexon relied on a statement of undisputed facts, the indemnity agreement, the sworn declarations of its attorney, Michael Belinski, and the agreed order of settlement between Lexon and Metro. Lexon argued that it was entitled to summary judgment because the undisputed facts showed that the Indemnity Agreement had been signed by the Indemnitors; WRD had failed to complete the infrastructure; a claim had been made by Metro; Lexon had agreed to complete the infrastructure; and the Indemnitors had failed to indemnify, defend, and exonerate Lexon and had failed to post collateral, pay monthly premiums, and reimburse Lexon.

Lexon's statement of material facts consisted of 17 statements that, consistent with Rule 56.03 of the Tennessee Rules of Civil Procedure,[3] cited to the sworn declarations of Mr. Belinski. In his declaration, he stated that: Metro had "made demand under certain surety bonds"; that those bonds were issued, in part, in consideration of the execution of a certain General Agreement of Indemnity; that "despite demand, Indemnitors have failed to indemnify, exonerate, or defend Lexon from such claims and all loss, costs, expenses, and premiums incurred, as they are obligated under the Indemnity Agreement"; that the Indemnitors had failed to post collateral despite Lexon's demand; that Lexon and Metro executed an agreed order in which "Lexon agreed to an order of the Court requiring it to complete the remaining public infrastructures to the Carothers Crossing subdivision"; that the Agreed Order was entered "in good faith and under a belief that such agreement was expedient and justified under the circumstances"; and that Lexon had spent $31,150 in construction, estimated the completion cost to be $616,751.25, was owed $133,044 by the Indemnitors in past due premiums and incurred $31,754.85 in attorneys' fees to the date of the declaration.

The Indemnitors disputed 10 of the 17 statements of fact; in support of their disputes, they cited allegations of the complaint, answers, cross/third-party complaint, and the following statements from the affidavit of Don B. Smithson, the President of WRD and the Chief Manager of Wood Ridge Investments:

> 8. That Lexon Insurance Company ("Lexon") and Defendants have each admitted in their pleadings in this matter that no bond was issued as required in Chapter 6, subsections 1 and 2, of the Metropolitan Government Subdivision Regulations and this is a fact.
> 9. That no bond has been issued as provided for in Chapter 6, Subsections 1 and 2, of the Metropolitan Government Subdivision Regulations to secure the completion of the Carothers Crossing Development.

---

undertakings and other writings obligatory in nature of a bond" issued by Lexon. Thus, the indemnity agreement is valid and enforceable.

[3] That rule reads in pertinent part: "Each fact shall be supported by a specific citation to the record." Tenn. R. Civ. P. 56.03.

10. That the Defendants do not owe Lexon the claimed premiums for bonds since no bond was issued.

11. That I have requested that Lexon provide me with a copy of any bond issued insuring the Defendants performance and they have been unable to provide me a copy of the same.

12. That I have requested that Metropolitan Nashville Government provide me with a copy of any bond issued insuring the Defendants performance and they have been unable to provide me a copy of the same.
\*\*\*

16. That I and each Defendant submit that they have no obligation under the General Agreement of Indemnity as their entry into this agreement and obligations arising there under were conditional upon the issuance of a bond.
\*\*\*

20. That the Defendants have no remaining obligations to Metropolitan Government of Nashville and Davidson County ("Metro") to complete any public improvements required by Metro under an Agreed Order entered into between Lexon.

In six of the disputed statements, the Indemnitors admit they entered into the three performance agreements, but assert that Lexon did not issue separate bonds. In the remaining four responses, the Indemnitors admit that Lexon made demand pursuant to the indemnity agreement, but deny that they had any obligation to post collateral, exonerate, indemnify, or reimburse Lexon, or pay past due premiums, attorney's fees, or costs to Lexon. The Indemnitors' responses to these statements are all premised upon the fact that Lexon did not issue a separate document evidencing its obligation as surety which the Indemnitors contend relieves them of any obligations under the indemnity agreement.

"A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 632 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)); *see also Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) (citing *Eskin v. Bartee,* 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999)). We have held that Lexon was not required to issue a separate bond document in addition to signing the performance agreement to trigger the Indemnitors' obligations under the indemnity agreement; in light of that holding, the statements which the Indemnitors' dispute are not material for purposes of determining whether Lexon was entitled to summary judgment.

In that regard, we consider the following two undisputed facts to be dispositive:

10

9. Claims have been made against Lexon under the alleged Bonds or other undertakings of Lexon on behalf of WRD and Metro and Capital Bank[4] seeks recovery from Lexon in this action. Complaint at ¶ 13; Lexon's Cross/Third-Party Complaint at ¶ 15; Defendants' Answer to Lexon's Cross/Third-Party Complaint at ¶ 15; Decl. of Michael Belinski at 115.

RESPONSE: Admitted for purposes of summary judgment only.

*** 

17. Defendants have failed to indemnify, exonerate, or defend Lexon from such claims and all loss, costs, expenses, and premiums incurred. Lexon's Cross/Third-Party Complaint at ¶ 12; Defendants' Answer to Lexon's Cross/Third-Party Complaint at 12; Decl. of Michael Belinski at ¶ 7.

RESPONSE: Defendants admit for purposes of summary judgment only.

When the claim was made by Metro to enforce WRD's obligations under the performance agreements, Lexon performed its function as surety by initially defending and then settling the claim and working to complete construction. The Indemnitors have failed to perform their reciprocal obligation under the agreement to indemnify Lexon, and Lexon was entitled to judgment as a matter of law.

## C. The Indemnitors' Motion for Summary Judgment

To support their motion, the Indemnitors relied upon a memorandum of law, statement of undisputed facts, the declaration of Don B. Smithson, the Metro Subdivision regulations, and the declaration of Michael Belinski.

The motion and supporting material, like their response to Lexon's motion, are premised upon and reflective of their theory that, because Lexon did not issue a separate bond, no obligation to indemnify arose. The facts which they contend are undisputed and which should result in summary judgment in their favor addressed the execution of the indemnity agreement; the language of the subdivision regulations; the execution and construction[5] of the performance agreement; that no separate bond was issued; and certain allegations of the pleadings. Lexon disputed only one statement of fact, which

---

[4] Capital Bank was permitted to intervene as Defendant in this action; it is not involved in this appeal.

[5] Lexon correctly observes in its response that construction of the performance agreement and of the regulations are questions of law rather than fact.

11

sought to characterize Lexon's claims for recovery and which is not material to resolution of the motion.[6]

We have held that Lexon's execution of the performance agreements was sufficient to create the obligation to indemnify; for the same reasons, the facts relied upon by the Indemnitors in support of their motion are immaterial. The court did not err in denying their motion.

## D. Other Matters

### 1. Additional Factual Findings

While the Indemnitors do not contest the factual findings or contend that an issue of material fact precludes the grant of summary judgment, they assert that the court erred in granting Lexon's motion without making factual findings "that the Indemnitors and/or WRD, Inc. were in default under the terms of the Performance Agreement[[7]] and . . . that Lexon paid anything pursuant to a surety bond."

In its answer to Metro's Complaint, WRD admitted that "all improvements have not been completed." In his declaration, Mr. Belinski attested to the facts that Lexon had expended $31,150 and expected to spend $616,751.25 to complete the required infrastructure; these amounts were not disputed by any party. In light of this admission and statements as well as Lexon's settlement with Metro, taken in the context of the other factual findings in the order, the court did not err by not making the specific findings that the Indemnitors seek.

### 2. The Order

The Indemnitors argue that the order granting summary judgment to Lexon was prepared by counsel for Lexon and "is clearly not the product of the Trial Court's own independent judgment;" they urge that the case be remanded for the court to enter an order in compliance with *Smith v. UHS of Lakeside, Inc.*[8]

---

[6] Lexon admitted as true all statements, with the exception of the following:

> 11. Lexon's claims and each count seeking recovery against Defendants seeks recovery based upon the Defendants' execution of the Indemnity Agreement and not under Lexon's claim that they issued a bond. Cross/Third-Party Complaint of Lexon at ¶ 6-12.
>
> RESPONSE: Denied. The Cross/Third-party speaks for itself.

[7] Only WRD, not the other Indemnitors, was listed as Principal in the performance agreement.

[8] In *Smith v. UHS of Lakeside, Inc.,* the Tennessee Supreme Court discussed a court's adoption of party-prepared findings of fact and conclusions of law as follows:

There is nothing in the record before us that leads us to conclude that the order does not accurately represent the court's own deliberation and decision, nor does it create doubt in that regard.[9] No disputed facts material to the issues of law were presented in the motions for summary judgment and supporting documents. Neither party contends that the court's factual findings are not supported by the record nor cites additional facts pertinent to the resolution of these motions. This appeal turned upon the resolution of matters of law, and, as noted earlier, our review is *de novo*; in accordance with that standard we have made a fresh determination of the merits of both motions and have reached the same conclusion as the trial court. Upon the record presented, the safeguards discussed in *Smith* are satisfied, and we are confident that the order reflects the trial court's own deliberations and decision.

### 3. Judicial Estoppel

Although not raised as a separate issue on appeal, the Indemnitors assert that this Court should invoke the doctrine of judicial estoppel to prevent Lexon from taking what they characterize as inconsistent positions in this litigation by "us[ing] as a shield the fact that a bond was not issued [t]hen subsequently asserting a contrary factual position that it did issue a bond . . . as a sword to hold the Indemnitors liable." A thorough search of the record reveals that the Indemnitors did not plead judicial estoppel in the trial court as a defense to the action brought against them; the defense is only mentioned in the memorandum of law they filed in response to Lexon's motion for summary judgment. While we are not obligated to consider a matter that has not been raised as a specific

---

> [M]ost courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law, and orders as long as two conditions are satisfied. First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision.
>
> * * *
>
> Tenn. R. Civ. P. 56.04 requires the trial court, upon granting or denying a motion for summary judgment, to state the grounds for its decision before it invites or requests the prevailing party to draft a proposed order. Not only will this requirement assure that the decision is the trial court's, it will also (1) assure the parties that the trial court independently considered their arguments, (2) enable the reviewing courts to ascertain the basis for the trial court's decision, and (3) promote independent, logical decision-making.

439 S.W.3d 303, 315–17 (Tenn. 2014) (internal citations and footnote omitted).

[9] To support their argument, the Indemnitors assert that the reference in the order to WRD as an LLC instead of as "Inc." demonstrates the court's supposed "rubber-stamp[ing]" of a party-prepared order and "failure to perform [its] duties under Rule 56.04 and *Smith v. UHS of Lakeside*." WRD is referred to in the order as "Woodridge Development, Inc.," and it appears that the second reference to that entity as an "LLC" is a scrivener's error.

issue for our review on appeal[10] or to consider matters that were not raised in the appropriate manner before the trial court—such as by affirmative defense pled in the answer or a motion *in limine*—the parties have fully briefed this issue on appeal; accordingly, we will address it.

"The term 'judicial estoppel[]' . . . indicates particularly that class of estoppels arising from sworn statements made in the course of judicial proceedings, generally in a former litigation[.]" *Sartain v. Dixie Coal & Iron Co.*, 150 Tenn. 633, 266 S.W. 313, 316 (Tenn. 1924). Judicial estoppel is "based solely upon that public policy which upholds the sanctity of an oath, and precludes a party who has made a sworn statement—even in another litigation—from repudiating the same when he thinks it to his advantage to do so." *Id.* at 317. The Tennessee Supreme Court has clarified the doctrine as follows:

> [T]he doctrine of *judicial* estoppel is applicable only when a party has attempted to contradict by oath a sworn statement previously made. *See Allen v. Neal,* 217 Tenn. 181, 396 S.W.2d 344, 346 ([Tenn.] 1965) (noting that "[j]udicial estoppels arise from sworn statements made in the course of judicial proceedings, generally in a former litigation, and are based on public policy upholding the sanctity of an oath and not on prejudice to adverse party by reason thereof, as in the case of equitable estoppel").

*Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315 (Tenn. 2009) (emphasis in original).

The Indemnitors rely on the pleadings and the sworn declarations of Mr. Belinski to argue that Lexon has taken contradictory positions during this litigation.[11] The Indemnitors argue that the act of settling Metro's claim should estop Lexon from pursing their cross/third-party claim for indemnification under the indemnity agreement. We do not agree; their argument misconstrues the doctrine of judicial estoppel.

---

[10] *See* Rule 13(b) of the Tennessee Rules of Appellate Procedure.

[11] The Indemnitors argue that using the word "bond" to refer the performance agreements in the memorandum of law filed in support of Lexon's motion and in Mr. Belinski's declaration is evidence of an inconsistent position. We do not construe the reference in that manner, especially in light of the language of the indemnity agreement itself, which initially uses the phrase "certain bonds, undertakings and other writings obligatory in the nature of a bond" to describe the documents to be executed by Lexon, but later in the same paragraph shortens the language to "such bonds." The reference to the performance agreement as a "bond" does not amount to an assertion that the performance agreement is a security document that complies with the subdivision regulations' requirements for a performance bond.

14

Under the facts of this case, the prerequisites for applying the doctrine of judicial estoppel have not been met.[12] Lexon's decision to settle Metro's claim is not inconsistent with Lexon's denial of Metro's allegations that Lexon was liable under the performance agreements. Lexon has consistently maintained that the Indemnitors are bound by the terms of the indemnity agreement, regardless of the performance agreements' compliance with the subdivision regulations. For purposes of judicial estoppel, settling a claim is not equated with taking an inconsistent position. Lexon's conduct during this litigation does not warrant the application of judicial estoppel.

## IV. CONCLUSION

Based upon the foregoing analysis, we conclude that summary judgment should have been granted to Lexon and denied to the Indemnitors. We affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

---

[12] Judicial estoppel applies to sworn statements. The only materials the Indemnitors rely on in their arguments that can be considered for purposes of judicial estoppel are the declarations of Mr. Belinski. We have reviewed them, and the Indemnitors' convoluted arguments relating to them, and conclude that the declarations themselves contain no inconsistent positions.